FLORENCE E. DAUGHARTY v. ESSEN ERICK ANDERSON.

147 N. W. (2d) 378.

December 16, 1966—No. 39,970.

*Cann & Schmidt* and *Alfred C. Schmidt,* for appellant.
*Olson, Kief & Kalar,* for respondent.

FRANK T. GALLAGHER, C.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or a new trial. Plaintiff agrees that the statement contained in defendant's brief fairly represents the facts except for those facts essential to plaintiff's argument which are not contained therein and which have been incorporated in her argument.

Plaintiff was injured on September 23, 1961, in a collision between a 1961 Ford Falcon which she was driving and a 1955 Chevrolet owned and operated by defendant about 4 miles southwest of Gonvick, Minnesota. The accident occurred at about 9:30 a. m. on a dry day as defendant drove his car westerly on a 25-foot-wide county road which was dry with a surface of loose rocks and coarse gravel. Plaintiff was driving the Ford, owned by Otto Johnson, north on an intersecting road. Both parties were familiar with the intersection, having traveled over it many times. At the time of the accident, there was a stubble field or hayfield in the southeast corner of the intersection which had been cropped that summer. No claim was made of obstruction to vision in the southeast corner of the intersection although there was a tree and some bushes along the right side of the road on which plaintiff was traveling north.

There was a ridge starting about 350 feet east of the intersection on the east-west road. It starts rising beyond the 350 feet and the maximum height of the ridge above the level of the east-west road was variously estimated at 3 feet and at 3 feet with an additional 2½ feet of grass. Plaintiff, when questioned about the height of the ridge, said that she did not know except that it was more than half the height of a car. She testified that when she was 100 feet and also 200 feet back from the intersection on the north-south road, she could see 350 feet east on the east-west road. She said that while she was driving north she stopped her car about 1,000 feet back from the intersection to talk to an acquaintance; that she then continued her driving at from 30 to 40 miles per hour until she was about 100 feet south of the intersection, when she reduced her speed to between 25 and 30 miles per hour; and that as she approached

the intersection she applied her brakes and then slowed to 10 miles per hour when she entered the intersection. When she was about 100 feet from the intersection she made observations to the right and continued such observations until she was "a couple of lengths of the car" from it. She said she did not see any car approaching until defendant struck her, although she looked to the right "good" before she looked to the left.

Plaintiff also testified that she saw black and white cows in a field on the north side of the east-west road. Defendant's car had a black body with a white top.

On the day of the accident defendant, then about age 73, was driving his car, according to his deposition testimony, in a westerly direction at a speed of about 40 miles per hour as he came from Gonvick. When he was about a quarter of a mile from the intersection involved, he looked to the left but saw no traffic approaching on the north-south road traveled by the plaintiff. He claimed no obstruction to his vision on either side of the east-west road but he did notice some activity on the right side—a combine in the field which he thought was coming across. He continued watching the combine until he was satisfied that it was not on the road and then looked ahead again. He said that his wife called to him that a car was coming from the south; that he could not say how long it was from the time he looked ahead again down the road until his wife warned him of the approaching car except that "it might have been a little bit, * * *; no, I am pretty sure it was not"; and that he put on the brakes and the collision occurred. Defendant further said that he did not think he was going 40 miles per hour when he put on his brakes but that "I didn't see her car until I hit her."

Defendant testified that at the time of the impact he was traveling on his right side of the road; that he did not blow his horn before the accident; and that the front end of his car hit the right side of plaintiff's vehicle. There was testimony that after the collision both cars were facing east—the Ford in the ditch 18 feet north of defendant's car, which was about 31 feet from the point of impact in the intersection.

The case was tried before a jury, which returned a verdict for plaintiff in the sum of $10,000. Thereafter, defendant moved for judgment notwithstanding the verdict on the ground that plaintiff was contributorily

negligent as a matter of law; if that motion was denied, then for an order granting defendant a new trial on the grounds that the verdict and damages were not justified by the evidence; that the verdict was contrary to law; and for errors of law occurring at the trial with respect to certain instructions to the jury. If that motion was denied, defendant sought an order granting a new trial on the issue of damages only for the reason that the damages fixed by the verdict were not justified by the evidence. The court denied defendant's motion in all respects and this appeal was taken.

In a memorandum attached to its order, the court acknowledged that caution should be exercised in holding contributory negligence a question of law, where it is based on estimates of time, distance, speed, and the like. The court said:

"* * * [F]rom the evidence in the present case, the jury might reasonably have concluded that plaintiff's failure to see defendant was not due to the failure to look but to the fact that defendant's black and white vehicle was confused with the black and white cows in the pasture adjacent to the roadway upon which defendant was traveling. Having in mind the topography in the area of the intersecting roadways, the presence of some small trees or brush at various points along the roadway being traveled by plaintiff, the nature of the intersection which plaintiff intended to cross, the presence of cows of the same color as defendant's vehicle and the plaintiff's difficulty in attempting to estimate distances, I felt and still do that the question of whether she exercised the care of a reasonably prudent person was properly one for the jury."

The issues raised by defendant on appeal are (1) that plaintiff was contributorily negligent as a matter of law; (2) that it was prejudicial error for the court to instruct the jury that it might infer from defendant's failure to call his wife as a witness that her testimony would be unfavorable to him; and (3) that the trial court abused its discretion in finding that the verdict of $10,000 was not excessive and that it was not the result of passion and prejudice of the jury. The errors assigned by defendant on appeal are substantially those raised in his motion.

Defendant argues that the court erred in instructing the jury on the

inference which could be drawn from defendant's failure to call his wife as a witness. The court stated in its memorandum that under the particular circumstances of this case it could not agree that its instruction on that point was in error. It pointed out that defendant's wife was a front-seat passenger in the vehicle being driven by him and thus presumably an eyewitness to the accident and that she was present in the courtroom throughout the trial. The memorandum went on to state:

"* * * Until defendant had rested, plaintiff was not advised that the wife would not be called and at that stage in the trial could not, as of right, have called the wife as a rebuttal witness even if defendant had waived his privilege which he did not do. If called as a witness, the wife's testimony would presumably have related to her observations made at the time of the accident and not to communications between herself and her husband or to knowledge of matters gained by reason of the marital relationship."

It was the court's position that if sufficient reason exists for requiring a plaintiff to waive his privilege at the outset of a trial and before either party has offered testimony or run the risk of having opposing counsel argue the inference, certainly more cogent reasons exist for requiring a defendant to waive his privilege before the plaintiff completes his case in chief.

The court further stated:

"* * * So far as I am concerned this was a situation where the defendant had it within his power to present competent evidence relating to the circumstances of the accident and the plaintiff did not. Thus, no reason was perceived why plaintiff should not be permitted to argue the inference and if it was to be argued, then I would understand that it was within the trial court's discretion to instruct thereon for, as the Supreme Court said in Soukup v. Summer, 131 N. W. 2d 551, 554, 'it would be utterly incongruous to hold that the trial court may not advise the jury that the law permits the very inference we allow counsel to urge on them.'"

It is our opinion that under the evidence here plaintiff was guilty of contributory negligence as a matter of law in failing to observe defend-

ant as he approached from her right and that the court should have so instructed the jury. Since the jury might have found plaintiff not negligent, there must be a new trial. We do not order judgment for defendant because the evidence as to the proximate cause of the collision is unsatisfactory. If defendant did not see plaintiff until the impact, causation between her negligence and the collision would be clear. But if he did see or should have seen her in sufficient time to avoid a collision, and, aware that she was oblivious to his approach, he failed to reduce his speed and permit her to pass in front of him, the jury could find that his negligence was the sole proximate cause of the accident.

Defendant admits that his wife, a front-seat passenger, called his attention to plaintiff's car. It is important to the determination of the issue of proximate cause to know when this happened. The one person able to provide the answer was defendant's wife. Although she was in court, she was not called to testify. The jury could infer that her testimony would have been unfavorable, there being no explanation of the failure to have her testify. If defendant realized that the plaintiff intended to proceed through the intersection without stopping at a time when he was far enough away from the point of impact so that he had the time and ability to avoid the collision (see, Turenne v. Smith, 215 Minn. 64, 9 N. W. [2d] 409; Koval v. Thompson, 272 Minn. 53, 136 N. W. [2d] 789), the chain of causation between plaintiff's contributory negligence and defendant's negligence would have been broken. The critical question with respect to this aspect of the matter is: When did defendant's wife call his attention to the approach of plaintiff's car? If it was at a time when defendant was far enough away from the point of impact so that he could have avoided the collision notwithstanding plaintiff's negligence, the jury could find his negligence to have been the sole proximate cause of the accident, inasmuch as defendant's wife apparently had the information relating to this critical question and defendant neither called her nor explained his failure to do so.

Because the evidence on the other issues is all so close, we believe that in the interests of justice a new trail should be granted on all issues.

Reversed and new trial granted.