# MARY ELLA MARTIN, A MINOR, BY DONALD C. MARTIN, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. PAUL BUSSERT AND ANOTHER. RITA BUSSERT AND ANOTHER v. DONALD C. MARTIN AND ANOTHER.

193 N. W. 2d 134.

December 10, 1971—Nos. 42804, 42805.

30

*Karl J. Herman,* for plaintiffs-appellants.

*Johnson & Sands* and *Maurice C. Lizee,* for defendants-appellants.

*Dressel & Greising,* for plaintiffs-respondents.

*Meagher, Geer, Markham & Anderson, Roderick Blanchard, James W. Torke,* and *O. C. Adamson II,* for defendants-respondents.

Heard before Murphy, Peterson, Kelly, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

Appeals from judgments and from orders of the trial court denying motions for judgment notwithstanding the verdict or, in the alternative, for a new trial in consolidated actions arising as a result of an accident that occurred on June 15, 1968, at the intersection of County Roads Nos. 37 and 69 in Rice County. An action was brought by Donald C. Martin, a passenger and the owner of one automobile, individually and as father and natural guardian of Mary Ella Martin, the driver of the automobile, against Rita Bussert, the driver of the other automobile, and her husband, Paul, its owner. A separate action was commenced by Paul and Rita Bussert against the Martins, and the cases were

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

consolidated for trial. The jury, by special verdict, found Mary Ella Martin to be accountable for 80 percent of the causal negligence and Rita Bussert for 20 percent. The Martins, as both party plaintiffs and party defendants, interposed blended motions in each action for judgment notwithstanding the verdict or for a new trial. The motions were denied and they appealed.

At about 5 p. m. June 15, 1968, on a dry and sunny afternoon, Mary Ella Martin was driving her father's 1968 Buick in a southerly direction on Rice County Road No. 69. A girl friend and her father rode with her as passengers. At approximately the same time, Rita Bussert was driving her husband's 1965 Studebaker in a westerly direction on County Road No. 37. Five of her children were with her as passengers. County Roads Nos. 69 and 37 intersect in a "T" so that a car traveling south on No. 69 must turn either right or left upon reaching No. 37. Both roadways were blacktopped, were of approximately the same width, and were regulated by a nonposted speed limit of 65 m. p. h. Vision for both drivers at the uncontrolled intersection was unobstructed for a fair distance on each roadway.

At the trial, Rita Bussert testified that she did not see the Martin automobile at all prior to the impact. Mary Martin testified that she came over the crest of a hill on County Road No. 69 about a quarter of a mile north of the intersection at a speed of about 35 m. p. h. and slowed to a speed of about 10 m. p. h. Both drivers were familiar with the intersection. Mary first observed the Bussert car when it was moving through a curve about 400 feet east of the intersection. At that time Mary was about two car lengths from the intersection. She saw nothing unusual about the manner in which the Bussert automobile was proceeding and assumed it would slow down to permit the Martin vehicle to pass through the intersection. When being cross-examined, Mary testified that she had engaged her left-turn signal, but she admitted that she did not know precisely when she had done so, stating: "I didn't make a conscious note when I turned my signal on, I just know that before you come up to an

intersection you turn your signal on." When Mary had entered the intersection, she realized that the Bussert automobile was not going to stop for her, and she determined that it was best to accelerate her vehicle in an attempt to cross No. 37 and to drive into the ditch on the south side. Despite this testimony, the Martin vehicle left 15-foot skid marks prior to the point of impact. A deputy sheriff testified that he believed Mary was not wearing shoes. Donald Martin, Mary's father, noticed the Bussert vehicle anywhere from 4 to 10 seconds before the impact and estimated it was four car lengths away. He recalled that Mary slowed to 20 m. p. h., intending to turn left. Just as the nose of his Buick entered the intersection, he recalls having shouted: "* * * [W]ho is going to do something."

Rita Bussert testified that, as she rounded the curve on No. 37 east of the intersection, she was traveling at about 50 m. p. h., slowing to 40 m. p. h. as she approached the intersection. She looked to her right for southbound traffic on No. 69 but did not see the approaching Martin automobile.

Damage to the vehicles indicated that the Bussert vehicle struck the Martin vehicle on its left side towards the front.

■ Appellants contend that the trial court erred in failing to hold that Rita Bussert was negligent as a matter of law. The court refused a requested instruction to that effect and submitted that issue to the jury. Upon a review of the evidence, and more particularly in view of Rita Bussert's failure to see the Martin vehicle, we are convinced that Rita was negligent as a matter of law and that the trial court should have so instructed the jury. See, Daugharty v. Anderson, 275 Minn. 371, 147 N. W. 2d 378 (1966); Bellman v. Posnick, 233 Minn. 268, 46 N. W. 2d 475 (1951); Moore v. Kujath, 225 Minn. 107, 29 N. W. 2d 883 (1947). The jury, however, did find Rita negligent, and thus we now face the issue of whether the failure to give the requested instruction was reversible error. Although this issue has not been presented to us on frequent occasion, in Mutual Service Cas. Ins.

Co. v. Overholser, 239 Minn. 243, 245, 58 N. W. 2d 268, 269 (1953), we held:

"* * * [E]ven if the record justified a charge that as a matter of law [appellant] was negligent, the failure of the court to so instruct the jury was without prejudice to the [respondents] because a finding that [appellant] was negligent is implicit in the verdicts rendered."

In the instant case the answers in the special verdict clearly show that both drivers were found negligent. Under the circumstances, the failure to give the requested instruction did not reach that degree of prejudice which would require a finding of reversible error. We hold, therefore, that refusal of the trial court to instruct as requested was harmless error.

■ The trial court included Minn. St. 169.19, relating to left turns, in its instructions. Appellants allege error in giving the instruction by reason of the facts that (1) Mary Martin did have her turn signal on, (2) any failure on her part to signal for a left turn was not a causal factor, and (3) Rita Bussert did not see the Martin vehicle at all. Appellants' position is weakened by the ambiguity of Mary Martin's testimony set out above concerning her use of the left-turn signal. Based upon that testimony alone, it was not error to give the instruction regarding the statutory requirements for executing a left turn.

Appellants argue that, since Rita did not see the Martin vehicle at all, the giving of the left-turn instruction was superfluous and tended to focus the jury's attention upon Mary Martin's conduct. Respondents argue that, if Mary Martin had actually engaged her left-turn signal, Rita Bussert's attention might have been called to it. The evidence, however, is lacking as to whether a left-turn signal on a 1968 Buick could be seen by a driver of a vehicle approaching an intersection at a right angle. Taking the evidence as a whole, we conclude that it was proper for the trial court to give the instruction regarding left-turn signal requirements.

■ We are asked to order a new trial to correct what appel-

lants urge to be an inequitable and unfounded apportionment of negligence between the two drivers. Inasmuch as the States of Minnesota and Wisconsin have similar statutory provisions regarding comparative negligence, an examination of the case law of our neighboring state on the issue of apportionment of negligence would be helpful.

In Crawley v. Hill, 253 Wis. 294, 34 N. W. 2d 123 (1948), a pedestrian, while crossing a highway, ran in front of a car which struck him, resulting in his death. Under Wisconsin law, the driver of the vehicle had the right-of-way. The jury apportioned 80 percent negligence to the driver of the car and 20 percent to the pedestrian. On appeal, the judgment was reversed with a finding and conclusion that the negligence of the pedestrian was at least as great as the driver's. Apparently the holding is based upon the premise that a jury's finding will not be interfered with unless it appears to be absolutely necessary in order that justice be done.

A similar result was reached in Schwarz v. Winter, 272 Wis. 303, 75 N. W. 2d 447 (1956). A driver of a motor vehicle making a left turn failed to yield the right-of-way to an oncoming vehicle. The court's finding of 40 percent negligence on the part of the driver making the left turn and 60 percent negligence on the part of the oncoming driver was corrected by a finding and conclusion that the negligence of the driver making the left turn was at least as great as that of the other driver. The court concluded:

"While we are ordinarily reluctant to change the apportionment made in the lower court, under the peculiar circumstances of this case where the evidence of the plaintiff's negligence is so clear and the quantum so great, we feel constrained to do so." 272 Wis. 309, 75 N. W. 2d 451.

In another left-turn case, Grana v. Summerford, 12 Wis. 2d 517, 521, 107 N. W. 2d 463, 465 (1961), the court said:

"The comparison of negligence is determined not by the kind or character or the number of respects of causal negligence but

upon the degree of the contribution to the total of such negligence to the occurrence of the accident attributable to the persons involved."

In Pruss v. Strube, 37 Wis. 2d 539, 155 N. W. 2d 650 (1968), the trial court refused to grant a new trial on a finding by the jury that the apportionment should be 90 percent to defendant and 10 percent to plaintiff. The Wisconsin Supreme Court commented:

"* * * The trial court refused to interfere with the jury's apportionment of negligence on the ground it considered apportionment of negligence to be a jury function in the great majority of cases and because of the rarity of the instances in which the court could rule the contribution of the causal negligence of the parties is equal * * *. That is undoubtedly true, regardless of how weak the argument based on 'rarity' or 'great majority' is. * * * But, the rule is just as well settled that a new trial may be granted in the interest of justice because the verdict is against the great weight of the evidence even though there is sufficient credible evidence to support the jury's finding. * * * And this is the rule whether applied to a question of damages, negligence, causation, or comparison of the negligence. A new trial in the interest of justice has been granted when the jury's comparison of negligence was against the great weight and clear preponderance of the evidence even though it cannot be said as a matter of law the jury's answer is wrong." 37 Wis. 2d 544, 155 N. W. 2d 652.

However, the verdict was allowed to stand because the appellate court agreed with the trial court's determination that the jury's finding was not against the great weight of the evidence. See, also, Loomans v. Milwaukee Mutual Ins. Co. 38 Wis. 2d 656, 158 N. W. 2d 318 (1968).

In Lovesee v. Allied Development Corp. 45 Wis. 2d 340, 344, 173 N. W. 2d 196, 199 (1970), it was held:

"* * * In this process of apportionment the jury must con-

sider the conduct of the parties as a whole and in doing so must consider the standard of care applicable to the acts or omissions constituting the tortfeasor's conduct, the nature and character of the conduct and its intensity, directness and remoteness, as a substantial factor in the chain of causation.

\* \* \* \* \*

"\* \* \* We said in Grana v. Summerford (1961), 12 Wis. 2d 517, 526, 107 N. W. 2d 463, that a comparison of negligence is not determined by the kind or character or the number of elements of negligence but by the degree of contribution. \* \* \* This language did not mean the nature or character or respects of the negligence did not bear a relationship to cause and, therefore, should not be considered in determining apportionment in terms of percentage of negligence. It meant there was no mathematical formula."

It would appear from the foregoing Wisconsin cases that there is no mathematical formula that can be accurately utilized in apportioning negligence between tortfeasors. The rule enunciated in Lovesee v. Allied Development Corp. *supra,* and other cited cases, seems to stress the degree of contribution, and that does not depend entirely upon the kind or character or the number of elements of negligence. When it has appeared that the verdict was against the great weight of the evidence and that affirmation of the verdict would therefore result in injustice, the Wisconsin court has refrained from reapportioning or reassessing the percentages of negligence. Instead, it has corrected the seeming injustice by finding that the negligence of one tortfeasor was at least equal to the negligence of the other. In reviewing the findings of the jury, the same considerations are given to apportionment of negligence by the Wisconsin court as are given to the issues of negligence itself, causal relation, damages, or any other fact issue submitted.

This approach is consistent with the decisions we have reached when required to review jury findings. In Robertson v. Johnson, 291 Minn. 154, 190 N. W. 2d 486 (1971), we faced the task of

reviewing a jury's apportionment of negligence for the first time. The jury there apportioned 10 percent of the negligence to plaintiff, 50 percent to defendant LeRold, and 40 percent to defendant Cynthia Johnson. We held that as a matter of law defendant LeRold was not guilty of a greater degree of negligence than plaintiff and reversed. We stated (291 Minn. 158, 190 N. W. 2d 488):

"* * * We cannot escape the conclusion that the jury was influenced by the severity of plaintiff's injuries. There is no other explanation for holding LeRold five times more negligent than plaintiff."

From the evidence in that case, the finding of the jury was manifestly and palpably against the weight of the evidence.

Over the years we have adhered to well-established standards and guidelines in determining whether or not a jury finding shall be set aside or modified. Our decisions in that area of the law are reviewed in Templin v. Crestliner, Inc. 263 Minn. 149, 151, 116 N. W. 2d 178, 180 (1962), wherein we said:

"It is well settled in this state that an order denying a motion for a new trial on the ground that the verdict is not justified by the evidence will be reversed on appeal only if there is no evidence reasonably tending to sustain the verdict or if it is manifestly and palpably against the weight of the evidence. The question is not whether a new trial might properly have been granted but whether the trial court violated a clear legal right of defendant or abused its judicial discretion in refusing to grant a new trial. Austin v. Rosecke, 240 Minn. 321, 61 N. W. (2d) 240. * * *

\* \* \* \* \*

"In the instant case the question as to which version of the accident is correct is a pure fact question and the jury's determination must be accepted unless it is 'devitalized by inherent improbability or self-contradiction.' Flatt v. Hirmke, 178 Minn. 621, 227 N. W. 853, 854."

Upon a review of a jury's apportionment of negligence between tortfeasors we are governed by those same standards—that is, we will not substitute our judgment for that of the jury unless there is no evidence reasonably tending to sustain the apportionment or the apportionment is manifestly and palpably against the weight of the evidence.

It might appear inconceivable that Rita Bussert, who was required to yield the right-of-way but drove into the intersection without ever having seen the other vehicle, was found to be only one-fourth as negligent as the other driver. Those facts present a persuasive argument for disagreement with the jury's findings. There is, however, ample evidence to support the findings, particularly when the vagueness of some of the testimony of Mary Martin is considered. She claimed to have accelerated, yet her car left 15 feet of skid marks. She was not certain about distance and the timing of events. The jury could, and might have, concluded that, had she not applied her brakes, there would have been no accident. Finally, there was her vague testimony concerning her turn signal. When all of these factors are considered, the 80 percent to 20 percent ratio might seem unfair, but it is difficult to conclude that it is against the great weight and clear preponderance of the evidence.

Affirmed.