IN THE COURT OF APPEALS OF TENNESSEE
EASTERN SECTION

FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

RICHARD VARNER and ) C/A NO. 03A01-9706-CV-00258
TERESA VARNER, )
 ) HAMBLEN CIRCUIT
    Plaintiffs-Appellees, )
 ) HON. KENDALL LAWSON,
v. ) JUDGE
 )
STEPHANIE K. PERRYMAN, )
FARMHOUSE FOODS, and )
HALE BROTHERS, ) AFFIRMED
 ) AND
    Defendants-Appellants. ) REMANDED

W. DOUGLAS COLLINS, EVANS & BEIER, LLP, Morristown, for Plaintiffs-Appellees.

DARYL R. FANSLER, STOKES, FANSLER & WILLIAMS, Knoxville, for Defendants-Appellants.


**O P I N I O N**


                                        Franks, J.


        In this action arising from a motor vehicle accident, the Trial Judge entered judgment for damages for plaintiffs, and apportioned fault. Defendant Farmhouse Foods ("Farmhouse") has appealed.

        On July 12, 1995, Mark Reich was delivering Farmhouse products to Hale Brothers, Incorporated in Morristown. Reich parked defendant's vehicle along the north side of East Main Street, a two lane east-west street, and two other trucks parked behind Reich. The evidence establishes that the nose of the Farmhouse truck was approximately seven feet from the intersection of East Main and Cedar Street, with Cedar Street being a one-way street that runs in a generally north-south

direction. As Stephanie Perryman approached the intersection of East Main on Cedar Street, the trucks were parked to her left along Main Street. She testified that she stopped and attempted to determine if it was safe to turn left onto Main but was unable to see any westbound traffic. She further testified that she pulled out into the intersection in a normal manner and was immediately struck by Plaintiff Richard Varner's vehicle. His wife, Teresa Varner, was a passenger.

The Trial Court determined that Farmhouse was 90% at fault, and Perryman 10% at fault for the accident. The court assessed Teresa Varner's damages at $31,863.02 and Richard Varner's damages at $2,200.75. Plaintiffs were denied discretionary costs. Appellant contends that the Trial Court erred in finding appellant 90% at fault. Our standard of review as stated by the Supreme Court, is as follows:

> Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, *see e.g., Martin v. Bussart*, 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. Because this case was tried without a jury, our review of the issues of fact is *de novo* on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 27-3-103; Tenn.R.App.P. 13(d).

*Wright v. City of Knoxville*, 898 S.W.2d 177 (Tenn. 1995).

As we read *Wright*, the standard of review is *de novo* upon the record of the Trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d). We note the Minnesota case referred to in *Wright* in the same sentence with the "clearly erroneous" standard was a jury case. In non-jury cases, the preponderance of the evidence standard governs.

The evidence does not preponderate against the Trial Judge's findings. Generally:

> the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship

2

between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

*Eaton v. McClain*, 891 S.W.2d 587, 592 (Tenn. 1994)(citations omitted).

This list is not exclusive and not all factors are applicable in every case. *Id.* at 593. Based upon all of the evidence and circumstances, the evidence does not preponderate against the Trial Court's determination of fault.

The evidence shows that Reich parked Appellant's truck close enough to the intersection to block Perryman's view. Perryman testified that while all three trucks blocked her view, the Appellant's truck was mainly responsible. She also testified that she waited at the stop sign "at least two or three minutes" before attempting to pull into East Main Street. She could not reverse her direction because she was on a one way street, and although she could have presumably turned right instead of left, there is no guarantee that this would have avoided an accident because the her vision of westbound traffic was blocked. She also testified that Reich told her he had already seen some "near misses" at the intersection.

The investigating officer testified that due to the position of Appellant's truck, "the nose of your car would already be out in the intersection before you could visually see anything." He testified, without objection, that he thought appellant's truck "was a definite vision obstruction for Ms. Perryman and a primary contributing factor to the accident." We find no basis to alter the Trial Judge's apportionment of fault.

Richard Varner testified that he suffered a bruised abdominal muscle as a result of the accident, and that he first experienced pain about a week or two after

3

the accident. As a result of the injury, he incurred medical bills of $628.75. These bills were admitted pursuant to T.C.A. §24-5-113.

The appellant argues that plaintiff did not offer sufficient evidence of causation on this issue. Itemizing and attaching bills under T.C.A. § 24-5-113 constitutes prima facie evidence that the charges were necessary and reasonable. However, a plaintiff must also establish that the charges were incurred as a result of the defendant's negligent conduct. *See Lindsey v. Miami Dev. Co.*, 689 S.W.2d 856 (Tenn. 1985).

Appellees did not offer any expert testimony concerning Richard Varner's injuries. Whether Varner's testimony that he received a bruised stomach muscle as a result of the accident is sufficient to prove causation depends upon whether the bruised abdominal muscle is a sufficiently "simple" injury to permit a layperson to testify to causation. *See American ENKA Corp. v. Sutton*, 391 S.W.2d 643 (Tenn. 1965).

Varner's injury is arguably more complex than mere cuts and abrasions. However, a layperson can obviously testify to the presence of a bruise. Although there is no testimony that the bruise manifested itself visually, plaintiff testified that the stomach muscles were bruised in the accident, without objection. The evidence does not preponderate against the Trial Judge's finding on causation. T.R.A.P. Rule 13(d).

Appellant also argues that the award of damages to Teresa Varner is against the weight of the evidence. Teresa's bills in the amount of $1,117.57 were admitted pursuant to T.C.A. § 24-5-113. Dr. Unferth, a chiropractor who treated Teresa, offered the opinion that the accident was the proximate cause of her injuries. Although her medical bills admitted under the statute address charges for emergency room visit, x-rays and prescriptions, which were incurred before her visit to Dr.

4

Unferth, all of the treatment and tests relate to the same basic injuries and the doctor's testimony found credible by the Trial Judge was sufficient to establish causation.

The Trial Judge awarded Teresa the full amount of her medical bills, plus $1,435.50 in lost wages and $25,000.00 for pain and suffering. She testified she was employed by Argo Medical Services before the accident but was unable to return to this job because of its lifting requirements. She also testified to the numerous limitations her injuries caused. Additionally, her husband corroborated her testimony as to their limited activities, post-injury. Dr. Unferth was of the opinion that she suffered a 5% permanent impairment as a result of the accident, with chronic residual problems.

The evidence does not preponderate against the Trial Judge's findings.

Next, appellant argues the Trial Court erred by refusing to reduce the judgment against Farmhouse by the amounts already paid by defendants Hale Brothers and Perryman in an earlier settlement, and relies on T.C.A. § 29-11-105(2)(b). This section is part of the Uniform Contribution Among Tortfeasors Act, and provides:

> No evidence of a release or covenant not to sue received by another tort-feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrongful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of the consideration paid for it, whichever is greater.

First, it is necessary to determine if this section has any application to the facts of this case after Tennessee's adoption of comparative fault. *See McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). Although no reported Tennessee case has directly addressed this issue, an Arizona Court of Appeals which determined that a similar Arizona statute would not apply under similar circumstances is persuasive. *See Roland v. Bernstein*, 828 P.2d 1237 (Ariz.Ct.App. 1992). Arizona has adopted comparative fault by statute. However, the *Roland* Court articulated compelling

5

policy reasons for its decision:

> In addition, we believe that it would be anomalous to give the benefit of an advantageous settlement, not to the plaintiff who negotiated it, but to the non-settling tortfeasor.  Had plaintiff made a disadvantageous settlement , she would have borne that consequence because her recovery against  [the non-settling defendant] would have been limited to [the amount of the non-settling defendant's fault].  At a minimum, symmetry requires that if the disadvantage of settlement is hers so ought the advantage be.  Beyond that, we see no reason why a non-settling tortfeasor ought to escape the liability that is his by reason of the faulty assessment of probabilities by a settling tortfeasor.   Indeed, such a rule might well discourage settlement by the last tortfeasor on the reasoning that his exposure is limited to his degree of fault and even that might be reduced by reason of pre-existing settlements.

*Id.* at 1239.

Moreover, other jurisdictions have reached similar results. *See Wells v. Tallahassee Mem'l Reg'l Med. Ctr. Inc.*, 659 So.2d 249 (Fla. 1995); *Thomas v. Solberg,* 442 N.W.2d 73 (Iowa 1989);  *D.D. Williamson & Co. v. Allied Chem. Corp.,* 569 S.W.2d 672 (Ky. 1978); *Wilson v. Gault,* 668 P.2d 1104 (N.M.Ct. App. 1983); *Charles v. Giant Eagle Markets,* 522 A.2d 1 (Pa. 1978); *Haderlie v. Sondgeroth*, 866 P.2d 703 (Wyo. 1993).

Appellant contends that the Supreme Court's decision in *Bervoets v. Hardy-Ralls Pontiac-Olds, Inc., 891* S.W.2d 905 (Tenn. 1994), supports applying T.C.A. § 29-11-105(2)(b) in this case. *Bervoets,* is distinguishable from the present case.  First, in *Bervoets* the plaintiff had already released all defendants.  Thus, the case involved only an action for contribution between defendants.  Also, a trier of fact had not yet apportioned fault.  In the instant case, appellant was required to pay an amount representing 90% of the total judgment.  Since this amount corresponds with the Trial Court's determination of fault, there is no basis on this record to find that the appellant paid more than his fair share.  In *Bervoets,* the driver's settlement basically provided consideration for the plaintiff to release all other potentially liable parties. Thus, the guidelines suggested by the Court were appropriate to ensure that the driver

6

did not pay more than his share of fault.  The Court noted that "the defendant . . . is essentially attempting to recover the amount paid by him in excess of his proportional share of liability." *Id.* at 908.  These concerns are not applicable to the present case, where the Appellant paid only for its own percentage of fault.

We affirm the judgment of the Trial Court.

Finally, appellees contend that the Trial Court erred in denying their motion for discretionary costs.  Costs were requested pursuant to Tennessee Rules of Civil Procedure, 54.04.   The Trial Court heard arguments on the issue and denied the motion.  The awarding of such costs is a matter within the sound discretion of the Trial Court.  *Lock v. National Union Fire Ins., 809* S.W.2d 483 (Tenn. 1991).  There is no evidence in the record to indicate the Trial Judge abused his discretion.

We affirm the judgment of the Trial Court and remand with costs of the appeal assessed to the appellants.

\_\_\_\_

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.



_____
William H. Inman, Sr.J.