## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

LISA GRIGGS,

    Plaintiff-Appellee,

Vs.

**JAMES P. MIXON, JIMMY R. WORSHAM,
GENE BARKSDALE, SHERIFF OF SHELBY
COUNTY, TENNESSEE, and SHELBY
COUNTY, TENNESSEE,**

    Defendants-Appellants.

No. 02A01-9504-CV-00087
Shelby Law No. 11857

**FILED**

**August 6, 1996**

Cecil Crowson, Jr.
**Appellate Court Clerk**

FROM THE CIRCUIT COURT OF SHELBY COUNTY

THE HONORABLE KAY S. ROBILIO, JUDGE

John M. Moore, Kirpatrick, Moore & Westbrook, of Memphis
For Plaintiff-Appellee

M. Dell Stiner, Assistant Shelby County Attorney
For Defendants-Appellants

*AFFIRMED AS MODIFIED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

This is a governmental tort liability case arising out of an automobile collision.

Defendants, James P. Mixon; Gene Barksdale, Sheriff of Shelby County, Tennessee, and Shelby

County, Tennessee, appeal from the judgment of the trial court awarding plaintiff, Lisa Griggs,

damages for personal injury.

In June, 1985, plaintiff sued the above-named defendants and defendant James Worsham[1] for personal injury resulting from an automobile collision which occurred November 7, 1984. After a nonjury trial in November, 1994, the court assessed plaintiff's damages at $110,000.00, attributed fifty-one percent fault to Mixon, forty-nine percent to Worsham, and awarded judgment against Mixon, the Sheriff, and Shelby County in the amount of $56,100.00. Defendants have appealed and present three issues for review.

A review of the record reveals the following pertinent facts: On November 8, 1984, at approximately 8:55 p.m., defendant Mixon and his partner, David Gallagher, reserve officers in the sheriff's department, were patrolling in southeast Memphis; more specifically, the area encompassing the intersection of Winchester and Mendenhall. Mixon and Gallagher received a general broadcast from the Shelby County Sheriff's dispatcher requesting that all units be on the lookout for a vehicle with stolen plates that had been stopped earlier and released. After hearing the broadcast, Mixon and Gallagher pulled into the Toddle House parking lot near the northeast corner of Winchester and Mendenhall. Soon thereafter, the officers heard a second broadcast which informed them that a fugitive unit had located the car with the stolen plates near the intersection of Winchester and Getwell, approximately one mile away from Mixon's location, and intended to pull it over. Upon hearing that information, Mixon called the dispatcher and asked whether he and Gallagher should "pull over," a term in police parlance which apparently means to initiate backup. According to the uncontradicted testimony of Mixon, the dispatcher stated: "check show you pulling over," which confirmed that they should perform backup duties for the other officers.

Mixon testified that he turned on his siren and flashing blue lights and exited the Toddle House parking lot, turning to his right, or westbound, on Winchester. While the testimony of

_____

[1]Under the Tennessee Governmental Tort Liability Act as it existed in 1985, governmental entities could not be tried by a jury, T.C.A. § 29-20-307. Subsequently, prior to the 1994 trial, the case was bifurcated to allow the nongovernmental defendant a jury trial. Thus, Worsham is not a party to this appeal.

all of the eye witnesses indicates that Mixon's lights were on, there is conflicting testimony, as discussed *infra*, as to whether his siren was on, and if so, the amount of time that it was on prior to the accident. Mixon testified that he drove the patrol car to within five to ten feet of the intersection of Mendenhall and Winchester, where the light was red for westbound traffic on Winchester, stopped his patrol car, ensured that the intersection was clear of traffic, and then proceeded into the intersection. Again, there is conflicting testimony on whether he actually stopped or slowed his vehicle, but regardless, it is clear from the record that Mixon either slowed or stopped his patrol car prior to entering the intersection.

After Mixon advanced approximately twenty-eight feet into the intersection, his patrol car collided with a black Grand Prix driven by defendant Worsham, heading north on Mendenhall. Worsham's vehicle had come fifty-eight feet into the intersection, and the front end of Mixon's car struck the right side of Worsham's vehicle.

After the initial collision involving Worsham and Mixon's cars, Worsham's car spun and hit the automobile driven by plaintiff, a 1971 Maverick stopped in the left hand turn lane on Mendenhall, facing southbound. The force of the Worsham vehicle knocked Plaintiff's car sixty-nine feet, causing it to jump the curb on the east side on Mendenhall. All three vehicles sustained major damage.

Since this case was tried by a trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Appellants present three issues on appeal. We will consider appellants' first and second issues together. Those issues, as stated in the brief, are:

> Did the trial court err in not making a finding that the Sheriff's patrol car was being operated pursuant to an emergency?

> Did the trial court err in not making a finding that the Sheriff's patrol car was being operated with its flashing lights and siren in operation?

The governmental defendants rely on T.C.A. § 55-8-108 (1993) to justify the failure to

obey the red traffic control signal at the intersection. A police vehicle is an authorized

emergency vehicle. T.C.A. § 55-8-101(2)(A) (1993). T.C.A. § 55-8-108 provides, in pertinent

part:

> (a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

> (b) The driver of an authorized emergency vehicle may:

> \*          \*          \*

> (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

> (3) Exceed the speed limits so long as life or property are not thereby endangered . . .

> \*          \*          \*

> (c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state . . . .

> (d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

The trial court made no specific findings of fact; thus, it is not clear whether the court

allocated 51% of the fault to Mixon because no emergency existed, because Mixon did not have

his siren on, or for some other reason. Our review of the record, however, indicates that an

emergency, as contemplated by T.C.A. § 55-8-108, did exist. Mixon and Gallagher clearly had

some basis to treat, and did treat, the situation as an emergency. Mixon testified that the

dispatcher does not determine whether a particular incident is an emergency; rather, that

determination is up to the individual officer. The definition of "emergency" is somewhat

subjective; whether a true emergency exists may often be determined only by hindsight. In the

unique situations that officers of the law frequently find themselves, what appears to be of little

consequence may later be considered a great emergency, and vice versa. We therefore hold,

under the circumstances of this case, that Officer Mixon's determination that an emergency existed was sufficient to call the provisions of T.C.A. § 55-8-108 into play.

The next question is whether Officer Mixon complied with the requirements of T.C.A. § 55-8-108; that is, were his audible and visual signals working, and did he exercise due regard for the safety of others while responding to the emergency.

Mixon testified that his blue lights and siren were on when he left the Toddle House parking lot. Mixon further testified that he stopped his car five to ten feet before the intersection, ensured the way was clear, and then proceeded. Gallagher, Mixon's partner, corroborated Mixon's testimony that the siren and blue lights were on when he and Mixon left the Toddle House, and that Mixon stopped the patrol car before entering the intersection. Gallagher testified that he saw Worsham's car immediately prior to the accident and yelled a warning to Mixon, however, Mixon did not see Worsham's car until after the accident.

Eugene Pennington, a witness stopped in the left hand turn lane down the street from the intersection, testified that he heard what he believed to be the patrol car's siren before he saw the blue lights. Pennington also testified that Mixon's car either paused or stopped before entering the intersection.

A transcript of the testimony of David Futrell and Kelley Guthrie in a prior proceeding was introduced. They testified that they were in a corner gas station and saw the blue lights but did not hear the patrol car's siren until just at the point of collision, when it clicked on and then off again. Both Futrell and Guthrie testified that Mixon's car slowed, but did not stop, before entering the intersection.

Worsham told the investigating police officer that he saw Officer Mixon's lights, but did not hear a siren. Officer Jones testified that Mixon said he "checked up" at the intersection, and the officer interpreted that phrase as meaning that Mixon "didn't come to a total stop but thought he had control of the intersection and then proceeded on."

Regarding the question of whether Mixon exercised due regard for the safety of others when entering the intersection, the testimony of plaintiff, Futrell, Guthrie, and Pennington that

5

all of the traffic at the Mendenhall/ Winchester intersection was stopped prior to the time that Mixon and Worsham entered the intersection is significant. It is apparent from the testimony of these eye witnesses that they were all aware of the presence of an emergency vehicle. Worsham, however, made the following statement to Officer Jones at the scene: "I started to stop and then I changed my mind and I thought it would be better to just go." Significantly, Officer Jones and Officer William Howard, a second investigating officer, as well as Pennington, testified that Worsham smelled of alcohol, was swaying, and had blood shot eyes. Officer Howard stated: "Worsham was intoxicated. I smelled alcohol on him. I spoke with him, observed his speech to be abnormal. I observed his attempts to perform simple tests to measure his level of intoxication and did observe a breath test that was administered to him by a DWI officer." The record shows that Worsham admitted that he had been drinking and was arrested following the accident. It is unclear to what extent the trial court relied on the uncontroverted proof of Worsham's intoxication. While ruling on the case, the trial court stated:

> [I]t is unequivocal through the testimony of Jones . . . that Mr. Mixon was coming forward and that rather than the Grand Prix, which Worsham occupied, broadsiding Mr. Mixon, Mr. Mixon is broadsiding Worsham, and Worsham is in front of Mr. Mixon.
> Mr. Mixon says he never saw him . . . until he was upon him, but he was there, and Gallagher did see him, and that's unequivocal.

As previously stated, the trial court did not make specific findings of fact; however, it is clear from the testimony in the record that Mixon's blue lights were flashing. Whether the siren was on is less clear, but we can infer that the trial court found against Mixon on this point. Although very close, the evidence does not preponderate against that finding. T.R.A.P. 13(d).

Appellants' final issue is set forth below:

> Did the evidence preponderate against the trial court's finding that the Shelby County deputy sheriff was guilty of negligence to the extent of 51% of the comparative fault?
>
> A. Whether the findings of the trial court were based on sympathy and were not consistent with the evidence or the law?

It is apparent from the testimony and the physical facts that Worsham's negligence was a substantial cause of the accident. He was driving under the influence of intoxicants, he was driving at a high and excessive rate of speed under the circumstances, and, according to his own testimony, he saw the Mixon vehicle but decided to go on anyway. The issue appellants raise is whether the trial court erred in allocating the percentages of fault as it did. In making its ruling, the trial court stated:

> [I]t's a very close call on this I will certainly say, very close call and not easily arrived at, and the Court has given it much thought, but the Court is placing the responsibility for this accident, as the Court is required to do proportionally, 51 percent to Mr. Mixon and 49 percent to Mr. Worsham.
> The Court is certainly congizant of the fact that were the Court not to do that, there would be no recovery on the part of the plaintiff. We don't have in the state of Tennessee a purely pure comparative negligence statute.

The facts of this case do not support the trial court's finding that Mixon was 51% at fault, and the statement quoted above indicates that the trial court believed it had to allocate 51% of the fault to Mixon in order for the plaintiff to recover. We must respectfully disagree with the trial court's conclusion concerning the application of the comparative fault doctrine in Tennessee. *See McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992) (stating that in cases of multiple tortfeasors, plaintiff will be entitled to recover so long as plaintiff's fault is less than the combined fault of all tortfeasors).

While there is some evidence that Mixon's siren was not on, the proof is clear that his flashing lights were on, and that he, at a minimum, slowed his vehicle prior to entering the intersection. Mixon also testified that he did not see the Worsham vehicle prior to the collision, although his partner did. However, it does not follow that 51% of the liability should be attributed to Mixon.

In *Wright v. City of Knoxville*, 898 S.W.2d 177 (1995), the Supreme Court stated: "Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, *see, e.g. Martin v. Bussart*, 193 N.W.2d 134 (Minn. 1971), appellate courts may alter those findings if they are clearly erroneous." *Wright*, 898 S.W.2d at 181. We

find that this is such a case.  We  therefore modify the trial court's ruling and hold that the negligence in this case should be allocated 25% to Mixon and 75% to Worsham.

The judgment of the trial court is modifed to allocate twenty-five percent fault to appellants and seventy-five percent to Worsham and to award damages to plaintiff against appellants in the sum of $27,500.00.  Costs of appeal are taxed one-half to appellants and one-half to appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**


_____
**HEWITT P. TOMLIN, JR.,**
**SENIOR JUDGE**