IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

August 25, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

GREGORY HINTON,                ) HAMILTON COUNTY
                               )  03A01-9901-CV-00013
        Plaintiff-Appellee,    )
                               )
                               )
        v.                     )  HON. L. MARIE WILLIAMS
                               )  JUDGE
                               )
CITY OF CHATTANOOGA,           )
                               )
        Defendant-Appellant.   )  AFFIRMED AND REMANDED


KENNETH O. FRITZ and MICHAEL A. MCMAHAN OF CHATTANOOGA FOR
APPELLANT

MICHAEL A. WAGNER OF CHATTANOOGA FOR APPELLEE


O P I N I O N


                                    Goddard, P.J.


        This appeal from the Circuit Court of Hamilton County

concerns liability under the Tennessee Governmental Tort

Liability Act.  The City of Chattanooga, Tennessee, the

Defendant/Appellant, appeals an award of $45,000 to Gregory

Hinton, Plaintiff/Appellee, for an injury he received while

playing basketball on a court owned and maintained by the City of

Chattanooga.

The City presents four issues, which we restate, as follows:

> 1. Whether Mr. Hinton's assumption of risk precludes any recovery in this matter.
>
> 2. Whether the City was negligent in maintaining the condition of the gymnasium floor throughout the play of the basketball league on Sunday, January 19, 1997.[1]
>
> 3. Whether the City had notice that the floor was in a dangerous condition based upon the City's practice of maintaining the floor by dust mopping the floor before and during games.
>
> 4. Whether the trial court erred in finding that Mr. Hinton was 40% at fault and the City was 60% at fault for Mr. Hinton's injuries.

We affirm the judgment of the Trial Court.

On Sunday afternoon, January 19, 1997, Mr. Hinton arrived at the Tyner Recreation Center, which is owned and operated by the City of Chattanooga Department of Parks and Recreation, at approximately 3:45 to participate in a league basketball game, which was administered by the City. Mr. Hinton's game was scheduled to begin at 4:00 p.m., but did not begin until approximately 5:00 p.m.

---

[1]The City's brief refers to the date of Mr. Hinton's injury as January 26, 1999, and Mr. Hinton's brief refers to the date of his injury as January 26, 1997. The record refers to the date of Mr. Hinton's injury as January 19, 1997, which is the date used by this Court.

Mr. Hinton, an employee of Huntco Steel, played on that company's basketball team. He had not participated in a basketball league before, although he is an experienced amateur player. Mr. Hinton stated that he walked onto the court to begin warming up for his game once the game preceding his had ended. Mr. Hinton testified that he had been on the court for approximately sixty seconds when he felt his knee pop as he was shooting a right-handed lay-up. He then fell to the floor.

Mr. Hinton was helped off the floor by teammates and went outside the facility for air after the game had begun. Although Mr. Hinton attempted to re-enter the game after he had fallen, he felt that he could not continue. He testified that he did not see that the floor was dusty before he began playing on it, but noticed the dust on the floor when he sat down on the bench on the sideline after he had fallen.

Mr. Hinton further testified that he told Jerry Marshall, a coordinator of sports programs for the City, that the floor was dusty and that it had caused him to slip. Mr. Marshall, according to Mr. Hinton, stated that "he knew." Mr. Marshall gave Mr. Hinton a telephone number and told him that the City would pay for his injuries and that he should call either

Clarence Williams, a recreation supervisor for the City of Chattanooga Parks and Recreation, or him at that number.

Several of Mr. Hinton's teammates testified regarding what occurred that day. Clive Jackson, a co-worker with Mr. Hinton and coach of the league team, testified that the league was running behind that day. He further testified that while he was there at the facility, he did not see anyone dust mop the floor. He also testified that he saw Mr. Hinton's foot slide out from under him and saw him fall.

Fabian Timmons, another teammate of Mr. Hinton's, also testified that the league was running behind and that he saw no one dust mop the floor between the end of the game preceding his game and the start of his team's warm-ups. Mr. Timmons did state that he saw someone dust mop the floor at the end of his team's game. He also stated that he saw Mr. Hinton's foot slide out from under him as he went up for a lay-up. He stated that he told the referees that floor was slick, but they laughed at his comments.

Demetrius Tate and Charlie M. Smith, Jr., also teammates of Mr. Hinton's, stated that they too saw Mr. Hinton's

4

foot slide out from under him before he fell to the floor.  Mr. Tate also stated that he did not see anyone dust mop the floor.

The City acknowledged that it has a procedure for maintaining the floor during the play of basketball games by dust mopping the floor before the start of each game, at halftime of the game, or as needed.  The City argues that none of the players on Mr. Hinton's team complained that the floor was dusty or dangerous before playing or during their play on the floor, although at least one of the players maintains he informed the referees about the floor's condition.  The City maintains that the floor was dust mopped by City employees who were present during the play of the league basketball games.

Furthermore, the City contends that it provided floor mats for individuals to wipe their shoes on as they entered the building, as well as wet towels for players to wipe their shoes on as they began play.  Mr. Hinton denies that the City provided these things for the players.

Clarence Williams, the recreation supervisor, testified that the normal practice for the City is to dust mop the floor between games because dust can accumulate on the floor.  He acknowledged that the City had received complaints that the floor

5

was slippery before Mr. Hinton fell on January 19, 1997.  He further acknowledged that the City was aware that the cleaning service hired by the City was not doing a good job of cleaning the floor before Mr. Hinton's injury.

Mr. Marshall testified that Jeff Strong, a City employee who completed an incident report concerning Mr. Hinton's injury, told him that the City was having complaints about the floor before Mr. Hinton's injury.  Mr. Marshall also admitted that he gave Mr. Hinton the paper with the phone number to call Mr. Williams or him.

Dr. Kurt Chambless treated Mr. Hinton and found that he had suffered a rupture of the quadriceps tendon.  Dr. Chambless performed surgery to repair the injury.

The Trial Court found that both parties were at fault. It stated that both parties should have foreseen that an injury could occur if dust were on the basketball court.  It noted that the condition of the court was one "which the plaintiff with his experience in basketball reasonably should have been able to detect."  As for the City, the Trial Court found that it had a duty "to provide a safe place for the activity being conducted and the violation of that duty results in negligence."  The Trial

6

Court found Mr. Hinton to be 40% at fault and the City to be 60% at fault.  The Trial Court awarded Mr. Hinton $45,000 in damages.

The City's first issue on appeal concerns whether Mr. Hinton assumed the risk of injury by playing in the basketball league and thus, is precluded from any recovery in this case. The City argues that after Mr. Hinton was injured, "the game continued without a need to dustmop [sic] the floors based on the concerns of other players, employees of the City who administered the league, or the referees."  The City contends that it provided mats and wet towels for players to wipe their feet on and that the City attempted to dust mop the floors at regular intervals or as required.

Mr. Hinton argues that express assumption of the risk is not applicable to this case and that implied assumption of the risk no longer exists in Tennessee, citing Perez v. McConkey, 872 S.W.2d 897 (Tenn. 1994).  In Perez, the Tennessee Supreme Court stated that "the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault."  Perez, 872 S.W.2d at 905.  Mr. Hinton asserts that the Trial Court analyzed the facts of this case using that principle.

7

We find that the Trial Court evaluated Mr. Hinton's conduct under the principles of comparative fault, and the record supports the Trial Court's assignment of fault. Therefore, this issue is without merit.

In its second issue, the City argues that it adequately maintained the floor on which the basketball game was played. The City contends that it attempted to make the floor as clean as possible and to maintain it in a safe condition for play. The City further asserts that Mr. Hinton and his teammates acknowledged that the condition of the floor was safe by playing on the floor.

Mr. Hinton argues that the Trial Court found that the City breached its duty to him by not properly maintaining the gymnasium floor. He further asserts that the failure by the City to maintain the floor was an operational omission, not a discretionary one, and thus, the City is not immune from liability under the Tennessee Governmental Tort Liability Act.

The Tennessee Governmental Tort Liability Act grants immunity, subject to certain statutory exceptions, to governmental entities such as the City of Chattanooga. See Tenn. Code Ann. § 29-20-201.

8

Governmental entities are immune from liability for discretionary acts under Tennessee Code Annotated § 29-10-205, which provides in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

In 1992, the Tennessee Supreme Court adopted the "planning-operational test" to determine whether an action or inaction by a governmental entity is considered discretionary. Bowers v. City of Chattanooga, 826 S.W.2d 427 (Tenn. 1992). In that case, the Court discussed the difference between planning and operational:

> If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules.
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often

9

> implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act.

Bowers, 826 S.W.2d at 431.

The record indicates that the gymnasium floor was dusty and slick. The City's failure to maintain the floor by following its customary procedure for dust mopping the floor is clearly operational, not discretionary, in nature. Therefore, the City's immunity from liability is removed.

The City's third issue is that Mr. Hinton did not offer any evidence that the City had actual or constructive notice of a dangerous condition. The City argues that Mr. Hinton did not allege in his pleadings that the basketball court was in a dangerous condition.

Mr. Hinton asserts that the evidence overwhelmingly indicates that the City had notice of the dangerous condition of the floor. With respect to the pleadings, Mr. Hinton argues that he did allege that the floor was "not safe for play and was in an unsafe condition" (emphasis added). Mr. Hinton contends that "if the floor is not safe for play, it must be dangerous." Furthermore, Mr. Hinton maintains that the City, through its

agents and employees, had actual knowledge of the floor's dusty condition. Mr. Williams testified that the City had received complaints about the condition of the floor and that he and others in City management had been displeased with the quality of the work performed by the cleaning service hired to maintain the floor.

The record contains ample evidence that the City was well aware of the condition of the floor, and City employees had complained themselves about the quality of the work performed by the cleaning service. Therefore, this issue is without merit.

Finally, the City argues that this Court has the authority to reallocate the percentage of liability, citing Wright v. City of Knoxville, 898 S.W.2d 177 (Tenn. 1995). The City argues that in light of the evidence, this Court should find that Mr. Hinton was no less than 50% at fault. Mr. Hinton, however, asserts that the evidence supports the Trial Court's findings, and thus, the Trial Court's judgment should not be disturbed on appeal. Citing Wright, Mr. Hinton maintains that the "trier of fact has considerable latitude in allocating percentages of fault" to the parties.

In <u>Wright</u>, the Tennessee Supreme Court stated the following regarding the standard of review:

> Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, <u>see e.g.</u>, <u>Martin v. Bussart</u>, 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. Because this case was tried without a jury, our review of the issues of fact is <u>de novo</u> on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 27-3-103; Tenn.R.App.P. 13(d).

<u>Wright</u>, 898 S.W.2d at 181.

The Minnesota court in <u>Martin</u> stated its standard of review to be the following:

> Upon a review of a jury's apportionment of negligence between tortfeasors we are governed by those same standards--that is, we will not substitute our judgment for that of the jury unless there is no evidence reasonably tending to sustain the apportionment or the apportionment is manifestly and palpably against the weight of the evidence.

<u>Martin v. Bussart</u>, 193 N.W.2d 134, 139 (Minn. 1971). We note that the <u>Martin</u> was a jury case, whereas <u>Wright</u> was a nonjury case.

Following the decision in <u>Wright</u>, two different standards of review for comparative fault cases appear to have developed: a "clearly erroneous" standard and a preponderance of the evidence standard. The Western Section of this Court appears to have adopted the clearly erroneous standard. <u>See</u> <u>Griggs v. Mixon</u>, filed in Jackson on August 6, 1996; <u>Nichols v. Metropolitan Government of Nashville and Davidson County</u>, filed in Nashville on July 12, 1996. This section of this Court appears to have adopted the preponderance of the evidence standard. <u>See</u> <u>Varner v. Perryman</u>, 969 S.W.2d 410 (Tenn. Ct. App. 1997); <u>Richardson v. City of Knoxville</u>, filed in Knoxville on October 3, 1996.

We believe that the proper rule for nonjury cases is provided by Rule 13(d) of the Tennessee Rules of Appellate Procedure: we review the findings of fact by the trial court <u>de novo</u> with a presumption of correctness, unless the evidence preponderates against the judgment of the Trial Court. Rule 13(d) of the Tennessee Rules of Appellate Procedure also provides that for cases decided by a jury, findings of fact may be set aside only if there is no material evidence to support the verdict.

However in this case, using either the preponderance of the evidence standard or the clearly erroneous standard, we are of the opinion that the Trial Court should be affirmed.

For the foregoing reasons, the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below. Cost of appeal are adjudged against the City of Chattanooga and its surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

14