IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 28, 2017 Session

FILED

12/20/2017

Clerk of the
Appellate Courts

## ROY D. COX v. CAROLYN ELLEN COX

**Appeal from the Chancery Court for Sullivan County**
**No. C0017446C      E. G. Moody, Chancellor**

_____

### No. E2016-01097-COA-R3-CV

_____

This appeal arises from a combined judgment of divorce and an award of damages in tort. After awarding the husband a divorce, the court classified, valued, and divided the marital property. The court also granted the husband a judgment for compensatory and punitive damages arising from an intentional tort committed by the wife. The wife raises numerous issues on appeal, including the classification of marital property, the equitable division of the marital estate, and the amount of the damages award. Because the court's order lacks sufficient findings of fact and conclusions of law to explain its division of the marital estate or the amount of punitive damages awarded, we vacate those portions of the court's judgment and remand for entry of an order in compliance with Rule 52.01 of the Tennessee Rules of Civil Procedure. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Affirmed in Part; and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellant, Carolyn Ellen Cox.

David W. Blankenship, Kingsport, Tennessee, for the appellee, Roy D. Cox.

### OPINION

### I.

After eleven years of marriage, Roy D. Cox ("Husband") filed a complaint in the Chancery Court for Sullivan County, Tennessee, for an absolute divorce from Carolyn E.

Cox ("Wife"). This was the second marriage for both parties, and no minor children were involved. Wife filed both an answer and a counterclaim for divorce.

Nine months later, Husband filed an amended complaint, which included his original allegations but also added a claim for damages in tort. Husband claimed that Wife had attacked him with a knife, causing injuries. In her answer, Wife admitted that she stabbed Husband but denied that he was injured or entitled to damages.

A. PROOF AT THE HEARING

On May 13, 2015, the court held a combined hearing on both the divorce and Husband's tort claim. Wife stipulated that Husband was entitled to a divorce and did not request alimony. She also stipulated to the assault.

1. Proof Relevant to the Divorce Complaint

After cohabitating for ten years, Husband and Wife married in 1999 and separated in 2010. At the time of the hearing, Husband was 65 years old, and Wife was 51. The couple had accumulated a modest amount of assets during the marriage.

Husband owned Roy's Body Works, an automobile collision repair shop. He had no employees and performed all of the repair work himself. Wife testified that, after she moved in with Husband, she also worked in the shop albeit without pay. Wife's role was mainly limited to paperwork and tax returns, but at times, she also made repair estimates.

The parties agreed that their vehicles and other personal property were separate property. They also agreed to an even division of the proceeds from the sale of a camper. But they disputed the classification and valuation of their remaining assets,[1] including real property located in Sullivan and Hawkins Counties in Tennessee.

Before the marriage, Husband relocated his business to property he had purchased in Sullivan County. He later acquired the neighboring property and built the home where the parties lived. After the parties married, Husband added Wife's name to the title to both tracts of the Sullivan County property.

Also during the marriage, Wife and her sister each inherited a half-interest in real property in Hawkins County. Although the Hawkins County property is titled in Wife's

_____

[1] A major source of controversy at trial was the amount and source of cash kept in a safe in the marital residence. After hearing all the testimony, the court determined that the parties had not provided sufficient proof to value or award the safe contents in the division of the marital estate. Neither party disputes this finding on appeal.

2

name alone, the parties used marital funds to purchase the sister's interest and to make improvements on the property.

Another area of disagreement at trial was the classification of five accounts at Eastman Credit Union. Wife testified that the accounts were jointly owned. Husband maintained that the accounts were his separate property. But, on cross-examination, Husband admitted that the credit union accounts were owned by "Roy or Carolyn."

Two accounts were used solely for Husband's business,[2] and one checking account contained only Husband's social security benefits. The remaining two accounts, a primary share account and an investment certificate of deposit, were pledged as collateral for two loans made to Husband. The reasons for Husband's borrowing were not entirely clear from the record.

According to the testimony, in 2009, a branch manager of Eastman Credit Union convinced Husband that he could earn money by investing in or loaning money to a company called Thomcrete Construction, Inc. To obtain the necessary funds, Husband borrowed from the credit union. Specifically, on July 20, 2010, shortly before filing for divorce, Husband borrowed approximately $43,000, secured by the funds in the primary share account. And on September 9, 2010, he borrowed another approximately $107,000, secured by the certificate of deposit.

Whether it was an investment or loan, Husband's plan did not yield the anticipated gains. Thomcrete Construction failed to make any payments to Husband, and at the time of the hearing, the outstanding balance on Husband's loans was $134,408.04. To prevent the credit union from exercising its rights in the pledged accounts, Husband was making payments on the loans, but only an amount sufficient to cover accrued interest.

Husband admitted that he pledged the credit union accounts without consulting Wife. As of the hearing date, his attempts to restructure his loans with the credit union or to recover from Thomcrete Construction had proven unsuccessful. Husband agreed that, if he ever recouped any of his losses, he would share half of the recovery with Wife.

At trial, Wife also asked the court to hold Husband accountable for failing to maintain her health and automobile insurance during the divorce proceedings in violation of the statutory injunction.[3] Husband agreed that he stopped payment after Wife stabbed him but disputed the amount of Wife's claimed expenses.

---

[2] At the hearing, Wife waived any claim to Husband's business accounts.

[3] By statute, "[u]pon the filing of a petition for divorce . . . and upon personal services of the complaint and summons," a temporary injunction takes effect that, among other things, enjoins the parties from "allowing to lapse for nonpayment of premiums, any insurance policy," including health and automobile policies. Tenn. Code Ann. § 36-4-106(d) (2017).

For health insurance, Wife claimed that she paid both a $1,209.12 reinstatement fee and $7,949.61 in monthly premiums. She admitted, however, that after the separation, all her expenses, including the health insurance premiums and the reinstatement fee, were paid from her father's funds. Wife maintained that her father expected to be repaid. When asked for documentation of her father's payments, Wife could only show that he paid approximately $2,087 for the reinstatement fee and monthly premiums.

Similarly, Wife claimed that she paid $2,300 in automobile insurance premiums, but later admitted her father actually paid her premiums. And Wife only presented documentary evidence of two payments, totaling $1,146.

2. Proof Relevant to the Tort Claim

In March 2011, Wife entered the marital residence and stabbed Husband twice in the neck. She escaped while Husband was calling for assistance, but she was later arrested and convicted of simple assault. Paramedics treated Husband's injuries on site because he refused to go to a hospital.

Since that time, Husband had suffered from a recurring infection that had limited his ability to work. The symptoms first appeared several days after the stabbing. He did not feel well, and his wound turned red and puffy. His doctor determined that he had a bacterial infection and prescribed antibiotics. After a few doctor visits, the infection apparently cleared. But, according to Husband, the infection reappeared several times over the ensuing months. Husband claimed that he was taking antibiotics to treat the infection at the time of trial. But he did not submit any medical bills or medical testimony as evidence at trial.

Husband testified that, as a result of his injuries, he missed one month of work and lost approximately $20,000 in income. But on cross-examination he admitted that he had never reported $20,000 in business income in previous years. He also agreed that the lost income figure was an estimate based on anticipated walk-in business. Husband eventually conceded that he did not really know how much income he had lost when the business was closed. Husband did claim that, since the stabbing incident, his health had caused him to reduce his work hours.

B. THE COURT RULING

On May 29, 2015, the court issued an initial ruling. The court awarded Husband a divorce on the grounds of inappropriate marital conduct and dismissed Wife's counterclaim with prejudice. The court classified the couple's personal vehicles and property as separate property, including any associated debt. The court also permanently

4

restrained Wife from "coming about [Husband] at any place, including, but not limited to his place of business." The court reserved ruling on all other matters.

The court allowed Husband to submit his medical bills and the most recent credit union statement after the hearing. Husband submitted an invoice from Trinity Family Practice showing an amount due of $932.58 and an itemized list of payments to the medical provider for services rendered between March 15, 2011, and May 18, 2015. Husband's payments totaled $3,024.56.

Husband also submitted his most recent credit union account statement. As of April 30, 2015, Husband's business accounts contained approximately $13,000, and the checking account in which his social security benefits were deposited totaled $35,500. The two pledged accounts showed a combined balance of $156,649.43.

On September 17, 2015, the court issued a final order disposing of the pending matters. The court determined that Wife had no claim to Husband's business. The court also ordered Wife to reimburse Husband for the cost of storing her personal belongings.[4] Husband was ordered to reimburse Wife for the reinstatement fee she incurred after he wrongfully terminated her health insurance policy.

The court then valued and divided the remaining marital property. The court specifically noted that the parties had commingled and transmuted their separate assets into marital assets. The court determined that both the Hawkins County property and the Sullivan County property were marital assets and valued them at $93,500 and $150,000, respectively. Husband was awarded half the proceeds from the sale of the camper and the Sullivan County property while Wife received the other half of the camper proceeds and the Hawkins County property. The court ruled that, if Husband ever recovered on his action against Thomcrete Construction, the money received would be divided equally between Husband and Wife.

The court also found Wife liable on Husband's tort claim and awarded Husband $15,000 in compensatory damages and $10,000 in punitive damages.

## II.

Wife challenges both the court's division of the marital estate and the award of compensatory and punitive damages for Husband's tort claim. In a nonjury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence

---

[4] Husband paid $132 per month to store Wife's personal property in a pod outside the marital residence during the divorce proceedings.

5

is otherwise. *See* Tenn. R. App. P. 13(d). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

## A. The Marital Estate

### 1. Classification of Hawkins County Property

Before we address Wife's challenge to the trial court's division of the marital estate, we must consider her subsidiary argument that the court erroneously classified the Hawkins County property as marital property. "Dividing a marital estate necessarily begins with the systematic identification of all of the parties' property interests." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Once identified, the court is to "classify each of these property interests as either separate or marital property." *Id.* "'Separate property' is not part of the marital estate and is therefore not subject to division." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009).

All property acquired by either spouse during the marriage is presumed to be marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A) (2017); *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006). Wife, as the party seeking to rebut this presumption, has the "burden of proving by a preponderance of the evidence that the asset is separate property." *Fox*, 2006 WL 2535407, at *4.

Wife contends, and we agree, that "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent" is separate property. Tenn. Code Ann. § 36-4-121(b)(2)(D). But separate property may be converted into marital property by commingling or transmutation. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). Our supreme court has explained how the doctrines of commingling and transmutation work:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or

6

communications clearly indicating an intent that the property remain separate.

*Id.* (alteration in original) (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)).

The trial court found that the parties had transmuted the Hawkins County property into marital property, and the evidence does not preponderate against that finding. Marital funds were used to purchase an additional half-interest in the property and to make improvements on the property. The fact that the Hawkins County property was titled in Wife's name alone is not determinative. *See Cohen v. Cohen*, 937 S.W.2d 823, 833 n.12 (Tenn. 1996). "An asset separately owned by one spouse will be classified as marital property if the parties themselves treated it as marital property." *Fox*, 2006 WL 2535407, at *5.

2. Division of Marital Property

Next, we consider Wife's contention that the court's division of the marital estate was inequitable because the division unfairly favored Husband. She argues that the court failed to consider the parties' relative economic circumstances or to address her dissipation argument.[5] She also contends that she should have been awarded a portion of the pledged credit union accounts and the full amount of her claimed health and automobile insurance premiums.

Trial courts have broad discretion in dividing the marital estate, and their division is entitled to great weight on appeal. *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "Thus, we will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Altman*, 181 S.W.3d at 683.

Even though the division of a marital estate is left to the trial court's discretion, the decision must be guided by a careful consideration of the relevant statutory factors.[6]

---

[5] Wife argued that Husband's investment in Thomcrete Construction constituted dissipation of marital assets.

[6] The statutory factors include:

(1) The duration of the marriage;

7

Tenn. Code Ann. § 36-4-121(c); *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234-35 (Tenn. 2010). Here, other than the trial court's announced intention to "equalize" the division, the court provided little or no explanation for its division. The court failed to identify the relevant statutory factors or explain how those factors impacted its decision.

We have repeatedly emphasized the importance of providing findings of fact and conclusions of law in accordance with Rule 52.01 of the Tennessee Rules of Civil Procedure. *See, e.g.*, *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at \*4-5 (Tenn. Ct. App. Aug. 31, 2015). The requirement of detailed findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at \*8 (Tenn. Ct. App. May 15, 2009) (discussing a similar requirement found in Tennessee Code Annotated § 36-1-113(k)). Absent these findings, we are "left to wonder on what basis the court reached its ultimate decision."

---

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2016) (effective July 1, 2015 to June 30, 2017) (amended 2017).

*Id.* "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at \*8 (Tenn. Ct. App. Oct. 24, 2012).

When confronted with insufficient findings of fact, an appellate court is not without alternatives. One alternative is to vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law. *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Another alternative is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Id.* The appropriate alternative depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See id.* (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, \*26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable").

We conclude that the better alternative in this case is to vacate and remand for the trial court to make appropriate findings of fact and conclusions of law. The equitable division of marital property is a fact-intensive inquiry involving the careful weighing of the relevant statutory factors. The basis for the court's decision is not readily ascertainable from the record, and we cannot determine whether the court applied the proper legal standard. The issues raised on appeal involve credibility determinations and a careful balancing of the equities between the parties, not clear legal issues. *See Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at \*5 (Tenn. Ct. App. Nov. 30, 2016) (vacating and remanding for findings of fact and conclusions of law supporting the division of marital estate); *Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at \*5-6 (Tenn. Ct. App. July 25, 2016) (vacating and remanding case when lower court "did not specify which of the factual findings it applied in making its determination regarding marital property distribution"); *Turman v. Turman*, No. W2014-01297-COA-R3-CV, 2015 WL 1744278, at \*4-7 (Tenn. Ct. App. Apr. 14, 2015) (concluding that to vacate and remand was "the appropriate course of action" in appeal of equitable division of marital estate); *Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at \*6 (Tenn. Ct. App. Mar. 9, 2015) (choosing to vacate and remand when the "issues concerning the portion of the marital estate awarded to Wife [did] not involve a clear legal issue," and the basis for the court's decision was not readily ascertainable).

9

B.  DAMAGES IN TORT

Finally, we consider Wife's claim that the court awarded Husband an excessive amount of compensatory and punitive damages.[7]  The trial court awarded Husband $15,000 in compensatory damages and $10,000 in punitive damages and ruled that the damages award was separate from the division of the marital estate.[8]

1.  Compensatory Damages

In a nonjury case, we will affirm a damages award "unless 'the trial court has adopted the wrong measure of damages or . . . the evidence preponderates against the amount of damages awarded.'"  *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 443 (Tenn. Ct. App. 2013) (quoting *Moody v. Lea*, 83 S.W.3d 745, 751 (Tenn. Ct. App. 2001)).  "There is no mathematical formula for calculating damages in a personal injury action; rather, the award of damages is left to the discretion of the trier of fact upon consideration of the particular facts of the case."  *Id.*  Proof of the amount of damages must be sufficiently certain to allow the fact finder to make a "fair and reasonable assessment."  *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999).  "[U]ncertain or speculative damages are prohibited only when the existence, not the amount, of damages is uncertain."  *Id.*

---

[7] Wife also argues that medical proof was necessary to establish that the stabbing was the cause-in-fact of Husband's claimed injuries.  We agree that "plaintiffs must always establish causation, i.e., 'that the injuries or condition for which the medical treatment was sought was caused by the conduct of the defendant.'"  *Dedmon v. Steelman*, __ S.W.3d __, No. W2015-01462-SC-R11-CV, 2017 WL 5505409, at *6 (Tenn. Nov. 17, 2017) (quoting *Iloube v. Cain*, 397 S.W.3d 597, 603 (Tenn. Ct. App. 2012)).  Here the only proof of causation is Husband's testimony.  While ordinarily expert medical testimony is necessary to establish causation, lay testimony is competent in simple and routine cases, such as this one.  *See Varner v. Perryman*, 969 S.W.2d 410, 412 (Tenn. Ct. App. 1997) (affirming verdict based on lay testimony that accident caused stomach bruising); *see also Pellicano v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2003-00292-COA-R3-CV, 2004 WL 343951, at *9 (Tenn. Ct. App. Feb. 23, 2004) (discussing difference between simple injuries and those that require expert medical testimony); *Am. Enka Corp. v. Sutton*, 391 S.W.2d 643, 648 (Tenn. 1965) ("Lay testimony is competent to establish such simple but important matters as existence of pain, its location, inability to work, etc., but it may not be received and relied on to prove matters requiring scientific knowledge.").

[8] We find Wife's argument that the common law right to setoff entitled her to a reduction in the amount of damages awarded on Husband's tort claim unpersuasive.  The right to setoff arises when two parties have mutual debts.  "The fundamental philosophy of all setoffs and recoupments is that a party being sued for money may claim entitlement to money from the party bringing the suit, permitting the adjudication of countervailing claims in one suit."  *Conister Tr. Ltd. v. Boating Corp. of Am.*, No. M1998-00949-COA-R3-CV, 2002 WL 389864, at *18 (Tenn. Ct. App. Mar. 14, 2002).  Setoff cannot be asserted as a defense in an action for unliquidated damages.  *Mack v. Hugger Bros. Constr. Co.*, 283 S.W. 448, 449 (Tenn. 1926).  The two debts must be of the same nature.  *Conister Tr. Ltd.*, 2002 WL 389864, at *19.  The common law right to setoff is not applicable here.

10

Wife contends that Husband submitted insufficient proof of medical expenses. "An injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable." *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009). "In all but the most obvious and routine cases, plaintiffs must present competent expert testimony to meet this burden of proof." *Id.* "A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges." *Dedmon v. Steelman*, __ S.W.3d __, No. W2015-01462-SC-R11-CV, 2017 WL 5505409, at *4 (Tenn. Nov. 17, 2017) (quoting *Long v. Mattingly*, 797 S.W.2d 889, 893 (Tenn. Ct. App. 1990)); *see also Garner v. Maxwell*, 360 S.W.2d 64, 68-69 (Tenn. Ct. App. 1961) (concluding that nonmedical hospital employee was competent to testify as to the reasonableness of hospital charges).

In the absence of expert testimony, injured plaintiffs whose medical bills total $4000 or less may avail themselves of the rebuttable presumption provided by Tennessee Code Annotated § 24-5-113(a). *See Borner*, 284 S.W.3d at 218 (explaining that the statute aids plaintiffs "for whom the expense of deposing an expert may exceed the value of the medical services for which recovery is sought"). Attaching a copy of itemized medical bills to the complaint creates prima facie evidence that the bills were reasonable and necessary. Tenn. Code Ann. § 24-5-113(a)(1) (2017). And by serving a copy of itemized medical bills on the defendant at least ninety days prior to trial, an injured plaintiff enjoys a rebuttable presumption that the medical bills are reasonable.[9] *Id.* § 24-5-113(b)(1).

Husband did not present any expert medical testimony at trial and did not take advantage of the rebuttable presumptions in Tennessee Code Annotated § 24-5-113. Instead, after the trial had concluded, he filed with the court a copy of an invoice and a list of payments. We conclude that his proof of medical expenses was insufficient. *See Fye v. Kennedy*, 991 S.W.2d 754, 764 (Tenn. Ct. App. 1998) ("A plaintiff must prove that the services rendered were 'necessary' to treat the injury or condition in question; and, even if the services were necessary, that the charges in question were 'reasonable.'").

Even so, Husband testified that, as a result of the stabbing, he "laid on the couch for a month, sick." His sickness required him to close his business for multiple days and shorten his work hours. Husband was unable to quantify the amount of his lost income, but he was adamant that his recurring infection negatively impacted his health and his ability to work. Although Husband may have only provided scant proof of damages, we cannot say that the evidence preponderates against the court's award of compensatory damages. *See Carey v. Johnson*, No. M2002-00911-COA-R3-CV, 2003 WL 21439039,

---

[9] The rebuttable presumption in Tennessee Code Annotated § 24-5-113(b) is available for medical bills of any size. *Dedmon*, 2017 WL 5505409, at *5.

at *2 (Tenn. Ct. App. June 23, 2003) (concluding that the court's award of compensatory damages was reasonable based on the "modest" evidence presented).

2.  Punitive Damages

Our supreme court's decision in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901-02 (Tenn. 1992), governs "both the conditions under which a defendant c[an] be held liable for punitive damages and the factors that . . . determine the amount of punitive damages available." *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 540 n.8 (Tenn. 2008). A court may award punitive damages only upon finding clear and convincing evidence that "a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges*, 833 S.W.2d at 901. If the trial court determines that the defendant is liable for punitive damages, it must then determine the amount of punitive damages to award in light of the factors outlined by our supreme court. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 355 (Tenn. Ct. App. 2007).

Here, it is undisputed that Wife acted with the requisite intent to justify an award of punitive damages. Thus, our focus is on whether substantial evidence supports the amount of punitive damages awarded. Unfortunately, we are unable to effectively review the court's award in the absence of findings of fact and conclusions of law on the relevant *Hodges* factors.

Trial courts must consider these factors in determining the amount of punitive damages:

> (1) The defendant's financial affairs, financial condition, and net worth;
> (2) The nature and reprehensibility of defendant's wrongdoing, for example
> (A) The impact of defendant's conduct on the plaintiff, or
> (B) The relationship of defendant to plaintiff;
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
> (5) The expense plaintiff has borne in the attempt to recover the losses;
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

12

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Hodges*, 833 S.W.2d at 901-02. And the court's order must clearly demonstrate how each factor impacted the court's decision. *Culbreath v. First Tenn. Bank Nat'l Ass'n*, 44 S.W.3d 518, 529 (Tenn. 2001).

Findings of fact on each relevant *Hodges* factor are essential to effective appellate review. *Id.* at 528. Because the court's order failed to address any of the *Hodges* factors, we vacate the award of punitive damages and remand this case for a reassessment of punitive damages in light of the *Hodges* factors. *See Culbreath*, 44 S.W.3d at 529 (reversing and remanding case for reassessment of punitive damages award because the court's findings of fact "did not address each of the *Hodges* factors individually"); *Whalen v. Bourgeois*, No. E2013-01703-COA-R3-CV, 2014 WL 2949500, at *17-18 (Tenn. Ct. App. June 27, 2014) (vacating and remanding case for reassessment in light of *Hodges* factors).

## III.

Because the trial court failed to provide sufficient findings of fact and conclusions of law to explain its division of the marital estate, we vacate those portions of the court's decision and remand for entry of an order in compliance with Rule 52.01 of the Tennessee Rules of Civil Procedure. On remand, the court should equitably divide the marital property, as previously valued by the court, in light of the appropriate statutory factors. For the same reason, we vacate the court's punitive damages award on Husband's tort claim and remand for entry of an appropriate order after a reassessment of the amount of punitive damages in light of the *Hodges* factors. In all other respects, the decision of the trial court is affirmed.

_____
W. NEAL MCBRAYER, JUDGE

13