IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2019 Session

## GEORGE W. BROWN ET AL. v. MARKESHA C. ECHOLS ET AL.

**Appeal from the Circuit Court for Shelby County
No. CT-004626-16  Valerie L Smith, Judge**

———————————————————

**No. W2018-01240-COA-R3-CV**

———————————————————

This is a motor vehicle accident case.  Following a jury trial, the Plaintiffs were awarded $250,000.00 in damages.  On appeal, the Defendant challenges, among other things, the trial court's admission of video testimony from a medical expert and the court's decision to allow a vocational expert to testify as to loss of earning capacity damages.  Because we are of the opinion that the Defendant's evidentiary objections have merit, we vacate the jury's verdict and the trial court's judgment and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and KENNY ARMSTRONG, JJ., joined.

Dawn Davis Carson, Hal S. Spragins, Jr., and Dylan J. Gillespie, Memphis, Tennessee, for the appellant, State Farm Mutual Automobile Insurance Company.

Stephen R. Leffler, Memphis, Tennessee, for the appellees, George W. Brown, and Diane Brown.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On January 23, 2016, George Brown was involved in a motor vehicle accident with Markesha Echols.  Several months after the accident, on November 15, 2016, Mr. Brown and his wife, Diane Brown, commenced the present lawsuit by filing a complaint against Ms. Echols in the Shelby County Circuit Court.  Mr. Brown's uninsured motorist carrier, State Farm Mutual Automobile Insurance Company ("State Farm"), was later served with a copy of the complaint pursuant to the Tennessee Uninsured Motorist Act,

and on December 15, 2016, it filed an answer in defense of the action. At trial, State Farm did not dispute Ms. Echols' liability for the January 23, 2016 accident.

The primary dispute in this case is damages and whether certain asserted injuries, and their resulting impact on Mr. Brown's earning capacity, are causally related to the motor vehicle accident.

The night following the accident, Mr. Brown sought medical attention at Baptist Medical Group Minor Medical Center in Cordova for right-side low back pain with associated sciatica and foot numbness. There, he was instructed to seek further evaluation at the Baptist East Hospital Emergency Room. At Baptist East, Mr. Brown was diagnosed with sciatica, prescribed medication, and instructed to follow up with his family doctor.

Following his treatment at Baptist East, Mr. Brown presented at Semmes Murphey Clinic on January 27, 2016 and was seen by Dr. Jason Weaver. X-rays demonstrated "a very mild anterior subluxation of L5 on S1," and an MRI was ordered for further evaluation. The subsequent MRI revealed mild disc bulges, spondylolisthesis of L5 on S1, and other findings. Although a course of conservative treatment initially followed for Mr. Brown, he eventually consented to and underwent TLIF[1] surgery by Dr. Weaver in April 2016.

In a November 2016 follow-up visit with Dr. Weaver following the TLIF surgery, Mr. Brown expressed hesitation about going back to work due to the fact that his job required him to frequently lift heavy weights such as a 100-pound ladder. Dr. Weaver opined that Mr. Brown was "okay to go back to work as long as he is not lifting greater than 30 pounds and not doing any bending or twisting." In a subsequent visit with Dr. Weaver in January 2017, however, Mr. Brown reported that he could not return to work until he was cleared for full duty. Dr. Weaver advised him not to lift anything more than 30 pounds and opined that "permanently speaking, even after he has . . . reached maximum medical benefit that it will never be advisable for him to lift more than 50 pounds."

The evidence introduced into the record at trial also reflected that Mr. Brown had spinal issues predating the January 23, 2016 motor vehicle accident. In June 2014, for instance, Mr. Brown presented to Dr. Michael Sorensen at OrthoMemphis with complaints of back and right leg pain, as well as complaints of pain in his buttocks and right posterior leg. An x-ray report from that visit stated that Mr. Brown had spondylolisthesis at L5-S1, a pars defect at the right L5, and some moderate facet arthropathy at L5-S1. Although placed on a physical therapy plan, he was discharged from OrthoMemphis after rescheduling or cancelling several appointments, and he did

---

[1] "TLIF" is a transforaminal lumbar interbody fusion.

not complete the full complement of physical therapy sessions that had been recommended. According to Mr. Brown, he did not complete physical therapy because he felt it was unnecessary.

In February 2018, Dr. Weaver gave his deposition in connection with this case. During his deposition, Dr. Weaver was asked to compare his report of Mr. Brown with the report that Dr. Sorensen made in 2014 when he saw Mr. Brown for treatment at OrthoMemphis. According to Dr. Weaver's testimony there was "comparable L5-S1 spondylolisthesis" between the respective findings, and although the x-ray report from OrthoMemphis did not show the disc bulge that had appeared on Dr. Weaver's MRI, Dr. Weaver explained that "you won't see a soft tissue disc bulge or herniation on a plain x-ray radiology report." Concerning any connection between the motor vehicle accident at issue and Mr. Brown's TLIF surgery, Dr. Weaver specifically disclaimed that he was providing any testimony that the accident necessitated the surgery. Moreover, on cross-examination, Dr. Weaver only testified that the accident "may have" played a role in exacerbating Mr. Brown's back symptoms.

Given the nature of Dr. Weaver's deposition testimony regarding the TLIF surgery and his speculative opinion regarding the exacerbation of Mr. Brown's pre-existing symptoms, State Farm sought to bar the Plaintiffs from introducing or referencing his medical testimony at trial. In a pre-trial motion filed on March 5, 2018, it argued specifically as follows:

> Dr. Weaver never testified that the treatment he provided to Plaintiff George Brown was a result of the motor vehicle accident; in fact, Dr. Weaver specifically stated that he was not testifying that the automobile accident gave rise to Mr. Brown's surgery. Dr. Weaver's testimony does not provide "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." Accordingly, Dr. Weaver's testimony regarding Plaintiff George Brown's injuries and treatment should be excluded as he failed to provide specific testimony that Plaintiff George Brown's treatment was causally related to the underlying automobile accident.

(internal citation omitted). The motion came to be considered by the trial court on March 26, 2018, and shortly thereafter, on April 3, 2018, the trial court entered an order placing parameters on the Plaintiffs' proof at trial. In addition to holding that "the plaintiff shall not make any claim that the [TLIF surgery], performed by Dr. Jason Weaver of Semmes Murphey, was necessitated by the accident of January 23, 2016," the court ruled that "[c]ounsel for the plaintiffs shall not introduce any medical bills incurred by the plaintiff at Semmes Murphey." However, the trial court also held that Plaintiffs' counsel was "free to argue that the motor vehicle collision resulted in an exacerbation of the pre-existing condition of Plaintiff's lower back."

- 3 -

Following the entry of the foregoing order, State Farm filed a second motion to exclude Dr. Weaver's medical testimony. State Farm argued that Dr. Weaver's testimony had no probative value and contended that there was no testimony from him "that any medical treatment and/or injury was reasonable, necessary or causally related to the automobile accident." This second attempt to exclude Dr. Weaver from testifying fared no better than the first. In a subsequently-entered order, the court ruled that State Farm's motion was "not well taken" and expressly held that "the testimony of Dr. Jason Weaver shall be allowed to be presented as evidence by the plaintiff, except for prior rulings of this Court in the Order . . . entered with this Court on April 3, 2018."

In addition to seeking to exclude Dr. Weaver's medical testimony, State Farm sought to exclude the testimony of Plaintiffs' vocational expert David Strauser, Ph.D. Dr. Strauser, in reliance on the physical restrictions placed on Mr. Brown by Dr. Weaver following the TLIF surgery, had prepared an expert's report finding that Mr. Brown had experienced a loss of earning capacity. In a pre-trial motion filed on April 13, 2018, State Farm set out its objections to Dr. Strauser's testimony based on its concerns about the sufficiency of Dr. Weaver's medical testimony, stating in relevant part as follows:

> Plaintiffs cannot establish that Mr. Brown's diminished earning capacity is the result of the underlying accident in this matter. Dr. Strauser attributes Mr. Brown's diminished earning capacity to weight limitations imposed by Dr. Weaver. These weight restrictions were imposed only after Mr. Brown's herniated disc surgery, which Dr. Weaver did not attribute to the underlying accident. Mr. Brown's earning capacity was diminished as a result of the surgery, not injuries allegedly suffered in the accident with the defendant. This Court has Ordered that any testimony suggesting that the accident caused the surgery be excluded. Dr. Strauser's report should be excluded because it relies on Mr. Brown's surgery in establishing diminished earning capacity.

In adjudicating this motion, the trial court entered an order purporting to impose parameters similar to those connected to the testimony of Dr. Weaver. Specifically, the court held that "the testimony of Dr. David Strauser shall be limited to arguing that the vehicle collision resulted in an exacerbation of a pre-existing condition . . . but not as to limitations which would have occurred as a result of the surgery."

In spite of these rulings, at the trial of this matter, in April 2018, the trial court allowed the entire video deposition testimony from Dr. Weaver and the live testimony of Dr. Strauser, relying on Dr. Weaver's deposition testimony, to be considered by the jury. In commenting on both of these witnesses' testimony following the voir dire of Dr. Strauser, the trial court stated as follows: "[Dr. Weaver] puts forth enough to get an issue to the jury regarding aggravation of a pre-existing condition," and "Dr. Strauser should be able to testify as to the limitations that [Dr. Weaver] has described."

- 4 -

Upon the conclusion of the trial, the jury returned a verdict for $250,000.00 in damages for the Plaintiffs, including $235,000.00 attributable to Mr. Brown's alleged loss of earning capacity. An order on the jury verdict was entered by the trial court on April 27, 2018. On May 18, 2018, State Farm filed its "Motion for Judgment Notwithstanding the Verdict Or, Alternatively Motion for New Trial." In its motion, State Farm argued that a new trial should be granted because, among other things, the trial court had erred in admitting the testimony of Dr. Weaver and Dr. Strauser. On June 18, 2018, State Farm's motion was denied, and it thereafter timely appealed to this Court.

## DISCUSSION

In its brief on appeal, State Farm raises a number of issues for our review, asserting, among other things, that the trial court erred in admitting the video testimony of Dr. Weaver and in allowing the testimony of Dr. Strauser. As relief for these errors, State Farm prays that a new trial should be granted.[2] For the reasons stated herein, we are of the opinion that State Farm's request for relief has merit.

As alluded to earlier, a principal point of contention in this case is whether certain injuries and resulting damages are causally connected to the January 23, 2016 motor vehicle accident involving Mr. Brown and Ms. Echols. Primarily, the parties are in disagreement over the propriety of the evidence related to Mr. Brown's spinal injuries and alleged corresponding loss of earning capacity. It is the position of State Farm that the video testimony of Dr. Weaver and live testimony of Dr. Strauser was either inappropriately speculative or without a proper foundation. The admissibility of evidence is within the sound discretion of the trial judge, and we review the matter on appeal pursuant to an abuse of discretion standard. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992) (citations omitted).

Although causation can in some instances be established by lay testimony when a "simple" injury such as a cut or abrasion is involved, *see Varner v. Perryman*, 969 S.W.2d 410, 412 (Tenn. Ct. App. 1997) (citation omitted), "[m]edical causation and permanency of an injury must be established in most cases by expert medical testimony." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (citations omitted). Moreover, when damages are sought for loss of earning capacity, further expert proof is sometimes needed to specifically link the injury sustained to the impairment of the injured party's capacity to earn a living. As this Court has previously explained:

---

[2] In addition to requesting a new trial in the "Conclusion" section of State Farm's principal appellate brief, State Farm's counsel, in response to a specific question from a member of the judicial panel hearing this appeal, again stated that her client was seeking a new trial as a result of the alleged errors of the trial court.

[W]here the physical impairment can be objectively ascertained, and where its connection to impairment of earning capacity is obvious or ascertainable from other evidence, then separate medical testimony is not required to establish the elements of proximate cause between impairment and earning capacity . . . .

Where, however, the physical impairment is obscure or subjective, or where the connection between the physical impairment and earning capacity is not obvious, then expert medical testimony may be essential. In such cases, there must be competent medical testimony that the physical condition suffered by the plaintiff, and which was proximately caused by the occurrence in suit, is a substantial factor in impairing the party's ability to earn.

*Oglesby v. Riggins*, No. W2010-01470-COA-R3-CV, 2011 WL 915583, at *6 (Tenn. Ct. App. Mar. 17, 2011) (quoting 29 Am. Jur. 3d *Proof of Lost Earning Capacity* § 11 (1995)).

Of course, to be competent, medical testimony must be predicated on something more than the possibility of a proposition, and "[t]estimony which amounts to mere speculation is not evidence which establishes proximate cause." *Primm v. Wickes Lumber Co.*, 845 S.W.2d 768, 771 (Tenn. Ct. App. 1992) (citations omitted). As the Tennessee Supreme Court has previously noted: "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough[.]" *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985) (citation omitted).

Here, upon our review of Dr. Weaver's medical testimony and the testimony from Dr. Strauser, we agree with State Farm that the trial court erred in allowing this evidence to be admitted at trial. At the outset, we observe that the trial court itself appeared to initially recognize that there was no competent proof linking the motor vehicle accident involving Ms. Echols with Mr. Brown's TLIF surgery. Indeed, in response to State Farm's pre-trial motion to exclude Dr. Weaver's testimony, the trial court ruled that "the plaintiff shall not make any claim that the surgery . . . was necessitated by the accident." This understanding was wholly appropriate, as Dr. Weaver clearly testified that he was not providing any testimony that the automobile accident necessitated the surgery.

Despite purporting to heed the limits of this aspect of Dr. Weaver's deposition testimony, the court nonetheless allowed his entire video deposition to be played at trial and permitted the Plaintiffs' counsel "to argue that the motor vehicle collision resulted in an exacerbation of the pre-existing condition of Plaintiff's lower back." As the trial court later opined during the course of the trial, "[Dr. Weaver] puts forth enough to get an issue

- 6 -

to the jury regarding aggravation of a pre-existing condition." We respectfully disagree. Aside from failing to link the automobile accident to any of Mr. Brown's injuries that allegedly required the TLIF surgery, Dr. Weaver's testimony is clear that he merely speculated that the accident "may have" played a role in exacerbating Mr. Brown's pre-existing spine and back symptoms. Such speculation is not sufficient to establish causation, and we agree that it was error for the trial court to allow Dr. Weaver's testimony to be offered on this issue. To the extent that the Plaintiffs wanted to establish an exacerbation of Mr. Brown's pre-existing injuries as a result of the motor vehicle accident, Dr. Weaver's testimony was inapt. The trial court erred in admitting his video deposition as evidence.

Because we find Dr. Weaver's testimony inadmissible, it follows that the trial court erred in allowing Dr. Strauser to testify. During his voir dire, Dr. Strauser made clear that he was "not a causation expert." He emphasized that his area of expertise was "to determine as a result of the restrictions that are provided, then what is the potential loss of earning capacity as a result of that, not based on causation." He reiterated this point during his cross-examination at trial, stating as follows: "My role is to take the restrictions that are provided by the medical provider and the individual themselves and use those to form my opinion." With respect to Dr. Weaver specifically, he noted: "I'm reviewing Dr. Weaver's deposition to say what are his restrictions that are provided." Dr. Weaver's testimony, however, did not establish any non-speculative link between Mr. Brown's post-TLIF restrictions, or any exacerbation of pre-existing symptoms, and the motor vehicle accident. When a physical impairment is obscure and a plaintiff is attempting to recover damages for a loss of earning capacity, "there must be competent medical testimony that the physical condition suffered by the plaintiff, and which was proximately caused by the occurrence in suit, is a substantial factor in impairing the party's ability to earn." *Oglesby*, 2011 WL 915583, at *6 (citation omitted). Although the reported restrictions on Mr. Brown's body may perhaps prevent him from continuing in his old course of employment, which involved lifting heavy weights, Dr. Weaver did not appropriately relate these injuries/restrictions to the motor vehicle accident at issue in this case, and Dr. Strauser did not even purport to bridge this causation gap. We agree with State Farm that there was not a proper foundation for allowing Dr. Strauser to testify about a loss of earning capacity as a result of the motor vehicle accident.

Under Rule 36(b) of the Tennessee Rules of Appellate Procedure, "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). In this case, upon hearing the speculative testimony of Dr. Weaver and Dr. Strauser's testimony, in reliance on the testimony of Dr. Weaver, that Mr. Brown had experienced a loss of earning capacity due to his injuries, the jury returned a verdict that included $235,000.00 in damages for loss of earning capacity. In light of this fact and the entire record, it is our opinion that the erroneously-admitted

testimony of Dr. Weaver and of Dr. Strauser more probably than not affected the verdict of the jury. Accordingly, we vacate the jury's verdict and the trial court's judgment and remand this case for a new trial on damages only.[3]

## CONCLUSION

For the foregoing reasons, the jury's verdict and trial court's judgment are vacated, and the case is remanded for a new trial on damages only and any additional further proceedings consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[3] Any raised issues which are not specifically addressed herein are pretermitted in light of our disposition.